UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BARRY STEPP, a single person,<br><br>    Plaintiff,<br><br>    v.<br><br>TAKEUCHI MFG CO (U.S.) LTD., a foreign company; TAKEUCHI MFG CO LTD., a foreign company; HERTZ EQUIPMENT RENTAL CORPORATION, a foreign corporation,<br><br>    Defendants. | CASE NO. C07-5446RJB<br><br>ORDER GRANTING TAKEUCHI DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT HERTZ EQUIPMENT RENTAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Takeuchi Defendants' Motion for Partial Summary Judgment (Dkt. 34) and Defendant Hertz Equipment Rental Corporation's Motion for Summary Judgment (Dkt. 37). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file herein.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On or about August 8, 2007, Plaintiff Barry Stepp filed suit in Pierce County Superior Court. Dkt. 1 at 2. The following facts are undisputed or taken in the light most favorable to Mr. Stepp, the nonmoving party:

ORDER - 1

In August of 2004, Mr. Stepp leased an excavator from Defendant Hertz Equipment Rental Corporation ("Hertz"). The excavator was identified as model number TB016 and manufactured by Takeuchi Mfg. Co. Ltd. ("Takeuchi Japan"), Takeuchi Mfg. Co. (U.S.) Ltd. ("Takeuchi U.S."), or both ("Takeuchi"). Hertz purchased the excavator from Takeuchi U.S. in March of 2000. Dkt. 36-2, Exh. A at 1.

TB016 excavators are equipped with a top-over protective structure ("TOPS") and a seatbelt. Dkt. 35 at 2. The TOPS serves to reduce the possibility of an operator being crushed in the event an excavator tips over, provided that the operator is wearing a seatbelt. *Id.* TB016 excavators are also equipped with warning decals and an operator's manual. *Id.*

Mr. Stepp intended to use the excavator to dig a trench for a water line at property located in Eatonville, Washington and owned by Lynn Weiss. Mr. Stepp was injured while operating the excavator. Jason Carroll, who lives across the street from Mr. Weiss, helped Mr. Stepp get out from under the excavator. Dkt. 36-7, Exh. K at 1. After Mr. Stepp left the scene of the accident to seek medical attention, Mr. Carroll noted a rock the size of a basketball located behind the excavator and "in the track marks left by the excavator." Dkt. 36-7, Exh. K at 2.

As a result of his injury, Mr. Stepp's right leg was amputated below the kneecap. Mr. Stepp contends that warning labels on the excavator were either missing or inadequate.

Mr. Stepp alleges that Takeuchi was negligent or grossly negligent in the manufacturing and design of the excavator, the failure to test or inspect the excavator, and the failure to warn or instruct. Mr. Stepp contends that Takeuchi is subject to strict liability under RCW 7.72.030(1) and (2). Finally, Mr. Stepp contends that Takeuchi breached express and implied warranties regarding the excavator.

As to Hertz, Mr. Stepp contends that Hertz negligently failed to maintain the warning labels on the excavator, misrepresented and concealed facts about the excavator, and breached express and implied warranties. Mr. Stepp contends that Hertz is subject to strict liability under RCW 7.72.040(1).

On August 23, 2007, Defendant Takeuchi Mfg. Co. Ltd. ("Takeuchi Japan") removed this matter to federal court. Dkt. 1. Pending before the Court are Takeuchi's Motion for Partial Summary Judgment (Dkt. 34) and Hertz's Motion for Summary Judgment (Dkt. 37). Because the motions are suitable for disposition without oral argument, the defendants' requests for oral argument are denied.

## II. CONTINUANCE

As a threshold matter, the Court notes that Mr. Stepp apparently intends to seek a continuance of the summary judgment motions. Dkt. 47 at 5 ("Plaintiff has filed a motion for the continuance of the Motions for Summary Judgment. The grounds for the motion are more fully set forth in the motion."). The summary judgment motions were originally noted for consideration on September 12, 2008, but were renoted for September 19, 2008, upon the request of Mr. Stepp's counsel. *See* Dkt. 44; Dkt. 45. To date, Mr. Stepp has not moved to continue the summary judgment motions.

The request for a continuance appears in Mr. Stepp's response:

> What [Hertz] and Takeuchi knew about the stability and track record of the TB016 and other excavators is relevant information and goes to the reasonableness of their respective actions in regard to the safety of the public. Because this information is not known at this time the motions on Summary Judgment are premature.

Dkt. 47 at 18.

ORDER - 3

Federal Rule of Civil Procedure 56(f) allows the Court to deny or continue a motion for summary judgment if the defending party establishes that it cannot present facts essential to its opposition. Fed. R. Civ. P. 56(f). The party seeking such a continuance must make (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists. *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129-1130 (9th Cir. 2004). The Court may deny the request unless the party opposing summary judgment articulates how additional discovery may preclude summary judgment and demonstrates diligence in pursuing discovery thus far. *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 1994). The burden is on the nonmoving party to establish that proceeding with additional discovery would produce evidence sufficient to defeat summary judgment and that the evidence it seeks is in existence. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

Mr. Stepp's request to continue the summary judgment motions was not filed until after the date the response was due and is therefore untimely. Furthermore, Mr. Stepp fails to specify the relevance of the evidence he seeks or provide any basis for believing that the evidence exists. The Court therefore declines to continue the motions for summary judgment.

### III. MOTIONS TO STRIKE

All parties have included motions to strike in their briefing on the motions for summary judgment.

First, Takeuchi moves to strike Mr. Stepp's supplemental response because the supplemental response was filed on the day before the noting date, and Takeuchi therefore has been deprived of an opportunity to respond. Dkt. 50 at 2 n.1. Hertz similarly moves to strike Mr.

Stepp's supplemental response and, in the alternative, requests "a reasonable opportunity to reply" to the late filing. Dkt. 52 at 11.

Mr. Stepp's filings do not comply with the rules of this district. Pursuant to Local Rule CR 7(d)(3), Mr. Stepp's responses to the motions for motions for summary judgment were due on September 15, 2008, the Monday before the noting date. Mr. Stepp filed three responses: one on September 16, 2008, and two on September 18, 2008. *See* Dkts. 47-49. Mr. Stepp did not seek leave to file a late response and did not seek leave to file multiple responses. Also, Mr. Stepp's 18-page, single-spaced response is improper. *See* Local Rule CR 10(e) ("The text of any typed or printed brief must be 12 point or larger and must, with the exception of quotations, be double spaced."). If Mr. Stepp had complied with Local Rule CR 10(e), this brief likely would have been overlength. *See* Local Rule CR 10(e) ("Motions for summary judgment . . . and briefs in opposition shall not exceed twenty-four pages."). Moreover, the combined length of the original response and each supplemental response results in an overlength filing.

The Court has reviewed the filings and has determined that the replies adequately address Mr. Stepp's filings. The Court therefore finds no prejudice and declines to strike Mr. Stepp's untimely filings. Counsel for Mr. Stepp is cautioned, however, that future filings must strictly comply with all applicable rules, including the local rules of this district.

Second, Mr. Stepp moves to strike the opinions of Jason Carroll and David Hughes, both of whom contend that they observed a rock the size of a basketball and opine that Mr. Stepp drove the excavator over the rock, causing the excavator to tip over and injure Mr. Stepp. Dkt. 47 at 11; Dkt. 36-7, Exh. K; Dkt. 36-7, Exh. L. Mr. Stepp contends that these witnesses are not qualified to offer opinions under Federal Rule of Evidence 701. Takeuchi maintains that these witnesses' opinions meet the standards of Rule 701, analogizing the testimony to a lay witness'

testimony about speeding. Dkt. 50 at 9. Takeuchi fails to offer any evidence from which the Court could determine that these witnesses are qualified to give expert testimony. *See* Fed. R. Evid. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion."). Alternatively, Takeuchi fails to persuade the Court that the cause of Mr. Stepp's accident is the proper subject of opinion testimony by lay witnesses who were not present at the time of the accident. *See* Fed. R. Evid. 701 (Lay witness "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."). Therefore, the opinions of Jason Carroll and David Hughes should be stricken, and the Court will not consider those opinions in deciding the summary judgment motions. Their observations, however, remain part of the record.

Third, Hertz moves to strike the declaration and supplemental report of Mr. Stepp's proffered expert, Thomas Albin, and Takuchi joins in the motion. Dkt. 52 at 9-10; Dkt. 50 at 5 n.3. Hertz first contends that Mr. Albin is not qualified because "he has never worked in the equipment rental industry nor does he have any particular experience with the equipment rental industry." Dkt. 52 at 9-10. Hertz's contentions are conclusory and do not persuade the Court that Mr. Albin's opinions extend beyond his qualifications as a licensed professional engineer and certified professional ergonomist. *See* Dkt. 30 at 1-2. While the defendants may dispute Mr. Albin's qualifications and the admissibility of his opinions, they have failed to demonstrate that Mr. Albin's opinions should be stricken at this juncture. Therefore, the Court should deny the motion to strike without prejudice.

ORDER - 6

Hertz also contends that Mr. Albin's September 1, 2008, report is untimely. Dkt. 52 at 10. The deadline for exchanging expert witness reports was August 6, 2008. Dkt. 28. Expert witness reports are subject to the supplementation requirement of Federal Rule of Civil Procedure 26(e), and Hertz fails to demonstrate that Mr. Albin's latest report is improper. *See* Fed. R. Civ. P. 26(a)(2)(D). The Court therefore declines to strike the September 1, 2008, report.

Hertz also moves to strike Mr. Albin's opinions on the basis of irrelevance: "The majority of Mr. Albin's opinions relate to the design of the TB016. These design issues are irrelevant to the claims against Hertz. As such, the portions of Mr. Albin's Declaration which discuss design issues should be stricken." Dkt. 52 at 10. Mr. Stepp apparently does not contend that Hertz is responsible for the design of the TB016, and Takeuchi has not sought summary judgment as to any design defect. *See* Dkt. 1-2, Exh. A at 7-8; Dkt. 34 at 1 (Takeuchi's motion "seeking dismissal of all claims against defendants Takeuchi except for plaintiff's design defect claims"). Therefore, whether the TB016 was defective is an issue not yet before the Court. While Mr. Albin's opinions regarding the design of the TB016 do not assist the Court in evaluating the claims that are the subject of the pending motions, that alone does not provide a basis for striking the opinions. The Court should therefore deny the motion to strike Mr. Albin's opinions.

Fourth, Hertz moves to strike "the arguments, declarations and exhibits submitted by the plaintiff on the issue of the exculpatory clause" on the grounds that Hertz has not moved for summary judgment on the basis of the exculpatory clause. Dkt. 52 at 9. Similarly, Hertz moves to strike portions of John Cain's declaration discussing Exhibit 6 and to strike Exhibit 6 itself. Dkt. 52 at 10; *see* Dkt. 47-4 at 3 (describing Exhibit 6). In a footnote, Hertz reserved the right to seek summary judgment based upon the exculpatory provision in the contract between Hertz and Mr. Stepp. Dkt. 37 at 18 n.1. In the body of Hertz's response, Hertz also maintained that the contract

included a waiver of all warranties. *Id.* at 19. Because Mr. Stepp appears to contest the enforceability of the exculpatory clause in response to Hertz's contention that he waived all warranties, the Court should deny the motion to strike references to, and arguments about, the exculpatory clause. Ultimately, as explained in more detail, the Court does not here reach the issue of the exculpatory clause.

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec.*

*Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, *supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## V. DISCUSSION

Mr. Stepp's claims arise under the Washington Products Liability Act ("WPLA"), which displaces common law claims for product liability. *See Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 853 (1989), *amended by* 779 P.2d 697. Takeuchi seeks summary judgment as to all claims other than Mr. Stepp's design defect claim. Dkt. 34 at 1. Hertz seeks summary judgment on all claims, contending that it is a product seller under the WPLA and that Mr. Stepp fails to create a genuine issue of material fact as to whether any failure to warn was the proximate cause of his injuries.

### A. STATUS OF DEFENDANTS UNDER WPLA

The WPLA differentiates between the liability of manufacturers and product sellers other than manufacturers. *See* RCW 7.72.030-040. Manufacturers are liable for products that are not reasonably safe due to the design, to inadequate warnings, to a manufacturing defect, or to failure to conform to express or implied warranties. RCW 7.72.030. Absent certain circumstances, product sellers are liable under the WPLA only if the plaintiff's harm was proximately caused by the (1) the negligence of the product seller, (2) the breach of an express warranty made by the

ORDER - 9

product seller, or (3) the intentional misrepresentation of facts or intentional concealment of information by the product seller. RCW 7.72.040(1); RCW 7.72.040(2) (listing circumstances).

The WPLA defines the term "manufacturer" to include product sellers who remanufacture the product or a component thereof or who hold themselves out as manufacturers. RCW 7.72.010(2). Product lessors who are "in the business of leasing" are held to the standard of care imposed on product sellers. *Bostwick v. Ballard Marine, Inc.*, 127 Wn. App. 762, 767 (2005).

For purposes of its summary judgment motion, Takeuchi U.S. concedes that it is a manufacturer under the WPLA. Dkt. 34 at 2 n.2. Hertz contends that it constitutes a product seller under the WPLA. Dkt. 37 at 18.

In this case, Mr. Stepp contends that Hertz should be held to the standard of a manufacturer because Hertz remanufactured the TB016 by removing or damaging warning labels or by removing the operator's manual. Dkt. 49 at 2; *but see* Dkt. 38-3, Exh. 2 at 4 (Mr. Stepp admitting "that Hertz Equipment Rental Corporation is not a manufacturer of the TB016 at issue in this litigation.").

Mr. Stepp fails to create a genuine issue of material fact as to whether Hertz removed or damaged warning labels on the TB016 or removed the owner's manual. Mr. Stepp similarly fails to offer, and the Court's research has not revealed, any authority that such actions would amount to remanufacturing or would render Hertz a manufacturer under the WPLA. The Court therefore concludes that Hertz does not constitute a "manufacturer" under the WPLA. Accordingly, because claims for breach of implied warranties against product sellers are not cognizable under the WPLA, Mr. Stepp's claims for breach of implied warranties should be dismissed as to Hertz.

**B. FAILURE TO WARN AND PROVIDE TRAINING**

Mr. Stepp contends that Takeuchi breached its failure to warn in two respects. First, Mr. Stepp disputes the sufficiency of the content of the warning labels on the TB016, contending that the labels conflicted with the warnings in the operator's manual and that the he was not warned about operating the excavator on a grassy slope. Dkt. 47 at 15. Second, Mr. Stepp contends that the placement of the warning labels on the TB016 was deficient.

With respect to Hertz, Mr. Stepp contends that Hertz was negligent in failing to maintain the warning labels on the excavator such that they would be legible and in failing to provide him training on how to operate the excavator. *Id.* at 16, 7; Dkt. 49 at 12.

Hertz and Takeuchi seek summary judgment on these claims, primarily on the grounds that Mr. Stepp fails to create a genuine issue of material fact as to proximate cause.

To meet the requirements of proximate causation, plaintiffs must put forth evidence of both cause in fact and legal causation. *Baughn v. Honda Motor Co., Ltd.*, 107 Wn.2d 127, 142 (1986). Cause in fact concerns the 'but for' consequences of an act or the physical connection between the act and the injury. *Id.* Cause in fact is a question of fact that generally reserved for the jury, but cause in fact may be determined as a matter of law if "the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion." *Id*. Legal causation, on the other hand, involves the "determination of whether liability *should* attach as a matter of law given the existence of cause in fact." *Hartley v. State*, 103 Wn.2d 768, 779 (1985) (emphasis in original).

**1. Content of Warning Labels**

As evidence of the alleged inconsistency between labels located on the TB016 and warnings contained in the operator's manual, Mr. Stepp asks the Court to compare a label on the excavator warning operators not to operate the machine on a slope measuring more than 15

ORDER - 11

degrees with language of the operator's manual warning that the machine should not be operated on a slope measuring more than 10 degrees. *See, e.g.*, Dkt. 36-3, Exh. C at 24 ("Never cross obstacles if they will seriously tilt the machine (to an angle of 10° or greater)."); Dkt. 36-4, Exh. D at 1 ("MAXIMUM SIDE INCLINATION ANGLE 15°").

While the language of these warnings would appear to be in conflict, Mr. Stepp fails to create a genuine issue of material fact as to whether the apparent inconsistency is a proximate cause of his injury. In his deposition, Mr. Stepp estimated that he was operating on a slope measuring five degrees, below the level listed in either warning. Dkt. 38-12, Exh. 11 at 29. Moreover, Mr. Stepp testified that he did not think he would have operated the excavator differently if the warnings had been consistent:

> Q. If you had seen a warning on the excavator that said, "Maximum side inclination angle 10 percent. Use extreme caution when operating across slopes and on uneven terrain. If side angle is greater than 10 degrees, machine can roll over" – if you'd seen that warning on the machine, would you have done anything differently on the day of the accident?
> A. I don't think so.

*Id.* at 30. Mr. Stepp therefore fails to create a genuine issue of material fact as to whether the TB016 excavator was rendered not reasonably safe by the apparent inconsistency between the warning label located on the machine and the warning in the operator's manual. In this respect, summary judgment should be granted.

**2. Location and Condition of Warning Labels**

Mr. Stepp contends that the location of the TB016 warning labels was such that the labels were not visible to an operator entering the cab of the excavator. Dkt. 48 at 3. In support of this contention, Mr. Stepp offers the opinions of Thomas J. Albin, who opines, in part, as follows:

> Warning signs regarding safe operation of the TB016 excavator on slopes were placed in an area where they are unlikely to be seen during entry to or use of the excavator.

ORDER - 12

> ***
> Further, the warning signs that they placed on the vehicle regarding safe operation on slopes (slope angle, adjusting tread width and a recommendation to read the operator's manual) were placed so that they were not readily seen while entering the operator space. Once seated, the warning signs were even less likely to be seen by the operator, as the signs would be located behind his or her feet.
> ***
> [T]he warning labels are placed where they will be edge-on (approximately perpendicular) to the operator's eyes as he/she enters the operator's compartment. Neither are they likely to be seen while operating the excavator. As seen in Photographs 1 and 2, the warning labels are placed so that they will be behind the operator's lower legs and feet during operation of the excavator.

Dkt. 36-9, Exh. O at 2, 6-7. Similarly, Mr. Stepp contends that the labels were placed where they were more likely to be damaged whereas product identifier labels were located where they were not likely to be scuffed and damaged. Dkt. 48 at 4.

Takeuchi and Hertz seek summary judgment on Mr. Stepp's failure to warn claim, contending that Mr. Stepp cannot create a genuine issue of material facts as to proximate cause and other required elements. Dkt. 34 at 13; Dkt. 37 at 20. Specifically, the defendants contend that Mr. Stepp's claim for failure to warn is defeated by his admission that he never reads or looks for warnings or user manuals on any heavy equipment he operates, that he did not see warning labels that were plainly visible, and that he did not read the operator's manual for the TB016.

The operator's manual contained graphical depictions of the warning labels located on the excavator. *See* Dkt. 36-3, Exh. C at 26. Mr. Stepp concedes that he did not attempt to locate or read the operator's manual before using the TB016. *See* Dkt. 36-8, Exh. M at 4 (Admission that "Mr. Stepp did not read the Operator's Manual prior to operating the TB016 on August 14, 2004."); Dkt. 38-12, Exh. 11 at 7-8. In his deposition, Mr. Stepp testified as to whether he would have read the manual if he had known it was available:

> Q. If someone from Hertz had told you there was an owner's manual on the excavator on August 14th, would you have read it before operating the excavator?

ORDER - 13

> A. If they told me to read the ex – to read the manual, I would have read the manual. If they said I had to read the manual, I would have read the manual, to rent the machine.
> Q. So if they said, "To rent this machine, you have to read the manual," you would have read the manual; is that correct?
> A. Yes, I would have read the manual.
> Q. What if when they were just checking it out to you they told you, "The owner's manual is on the machine if you want to read it," would you have read it?
> A. I don't know.
> Q. Would you have to speculate to say you would or you would not have read it?
> A. I don't know if I would have read it.

Dkt. 49 at 19.

The defendants analogize this case to *Baughn v. Honda Motor Co., Ltd.*, 107 Wn.2d 127 (1986), and *Hiner v. Bridgestone/Firestone, Inc.*, 138 Wn.2d 248 (1999).

In *Baughn*, two children were injured while riding a mini-trail bike on a public roadway. *Baughn*, 107 Wn.2d at 129. The parents of the children were experienced motorcyclists who had purchased mini-trail bikes and had instructed their children never to use the bikes on public streets and roads. *Id.* at 130. The court held that the allegedly deficient warnings on the bike did not cause the accident because the children had been warned by their parents not to ride mini-trail bikes in the street, because neither the parent who purchased the bike nor his children paid much attention to the owner's manual, and because the parent did not ask the salesperson for additional information. *Id.* at 144. The court concluded that the question of whether the mini-trail bike would have been purchased if the warnings had been more extensive was "purely speculative." *Id.*

This case is distinguishable. The injured parties in *Baughn* were aware of the danger that caused their injuries. In this case, there is no specific evidence that Mr. Stepp was aware of the danger that caused his injury or had previously been warned of that danger. *Baughn* is of limited assistance in evaluating Mr. Stepp's claims.

ORDER - 14

The *Hiner* case is more closely analogous to the facts of this case. In *Hiner*, the plaintiff was involved in an accident while driving her automobile on a wet road. *Hiner*, 138 Wn.2d at 252. The plaintiff contended that the tires on her car should have included warnings about the danger of mounting the studded snow tires only on the front wheels of a front-wheel drive vehicle. *Id.* at 251. The plaintiff attributed her accident to the lack of such warnings. *Id.* at 251-52. In *Hiner*, the Washington Supreme Court reversed the court of appeals' ruling reinstating the plaintiff's case after the defendant was granted judgment as a matter of law. *Id.* at 250-51. The court found proximate cause to be lacking because the plaintiff had not read the owner's manual's warnings regarding snow tires and did not look for warnings on her tires before the accident. *Id.* at 257-58.

In this case, Mr. Stepp concedes that he did not look for, or read, the operator's manual for the TB016. Dkt. 38-12, Exh. 11 at 7-8. Mr. Stepp does not dispute that the warnings located on the TB016 were duplicated in the operator's manual. Mr. Stepp similarly does not recall looking for warnings on the TB016. Dkt. 38-12, Exh. 11 at 7. In addition, Takeuchi has offered evidence that the TB016 was delivered to Hertz with an operator's manual and that the manual was present on the machine when the machine was photographed by Mr. Stepp's proffered expert; Dkt. 36-2, Exh. A at 2; Dkt. 51 at 2. In light of this evidence, there is no genuine issue of material fact as to whether the placement of the warning labels on the TB016 was the proximate cause of Mr. Stepp's injuries. The Court should therefore grant the motions for summary judgment as to Mr. Stepp's claim for failure to warn.

### 3. Failure to Provide Training

Mr. Stepp contends that Hertz was negligent in failing to provide him training on how to operate the excavator. Dkt. 47 at 7 ("[Hertz] did not provide warnings or instruction regarding

the use of the machine."); Dkt. 49 at 12 ("Hertz did inadequately discharged [sic] its duty to properly advise Mr. Stepp of the dangers attendant to operating this excavator . . . and failed to properly instruct Mr. Stepp about operating the equipment it rented."). These contentions contradict Mr. Stepp's admissions during discovery that he did not request any training from Hertz and that he was experienced and therefore did not require any training from Hertz. Dkt. 38-3, Exh. 2 at 14-16. More importantly, Mr. Stepp does not specify what kind of training should have been provided or explain how training would have prevented the accident. Mr. Stepp therefore fails to create a genuine issue of material fact as to whether Hertz's failure to provide Mr. Stepp with training constitutes negligence, and the Court should therefore grant summary judgment in favor of Hertz on this claim.

## C. BREACH OF WARRANTIES

A cause of action for breach of warranty may sound in contract or tort. If the "loss arises from expectations created by agreement," the claim sounds in contract. *Hofstee v. Dow*, 109 Wn. App. 537, 544 (2001). If the loss arises "from an unreasonable risk of harm created by a breach of the duty of reasonable care," the claim sounds in tort. *Id.*

Under the WPLA, manufacturers are strictly liable for harm proximately caused by a product that is not reasonably safe because it did not conform to the manufacturer's express warranty or to the implied warranties. *Thongchoom v. Graco Children's Products, Inc.*, 117 Wn. App. 299, 307 (2003). Absent certain circumstances, product sellers are only liable for breach of express warranties. RCW 7.72.040(1)(b) ("[A] product seller other than a manufacturer is liable to the claimant only if the claimant's harm was proximately caused by: . . . (b) Breach of an express warranty made by such product seller.").

Generally, there must be contractual privity between the buyer and seller before a plaintiff may maintain an action for a breach of warranty. *Thongchoom*, 117 Wn. App. at 307. The privity requirement is "relaxed," however, if the manufacturer makes express representations to the plaintiff and the plaintiff knows of such representation. *Id.*

A claim for breach of implied warranty also requires that the plaintiff "purchased something." *Id.* at 308. Courts determine whether an implied warranty exists by referring to the Uniform Commercial Code, RCW 62A. *See* RCW 7.72.030(2)(c) ("Whether or not a product conforms to an implied warranty created under Title 62A RCW shall be determined under that title.").

Takeuchi seeks summary judgment on all of Mr. Stepp's breach of warranties claims on the grounds that there was no express warranty, no implied warranty of fitness arose, the excavator was fit for its ordinary purposes, the Hertz contract disclaimed implied warranties, and privity is lacking. Dkt. 34 at 20. Hertz seeks summary judgment as to Mr. Stepp's claim for breach of express warranty on the grounds that there was no such warranty. Dkt. 37 at 19.

### 1. Express Warranty

In the complaint, Mr. Stepp contends that "[t]he Defendants expressly and impliedly warranted that the excavator and its components were safe, of merchantable quality fit for their intended uses." Dkt. 1-2, Exh. A at 7-8. The complaint is not signed by Mr. Stepp and therefore is insufficient to create a genuine issue of material fact. *See id.* at 9; Fed. R. Civ. P. 56(2)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial."); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may serve as an

opposing affidavit if it is based on personal knowledge and sets forth specific facts that would be admissible in evidence).

In responding to the summary judgment motions, Mr. Stepp fails to direct the Court to any express warranty. *See* Dkt. 36-8, Exh. N at 10 ("[A]t this stage of discovery there appears to be no express warranty, but discovery is ongoing, and particularly it is uncertain whether Barry Stepp might be the beneficiary of any express warranties Takeuchi made in favor of [Hertz]."). Mr. Stepp fails to create a genuine issue of material fact as to his claim for breach of express warranty, and Hertz and Takeuchi are therefore entitled to summary judgment on this claim.

**2.      Implied Warranties of Merchantability and Fitness for Particular Purpose**

Takeuchi seeks summary judgment on Mr. Stepp's claim for breach of the implied warranties of merchantability and fitness for a particular purpose. Takeuchi contends that there is no privity between Takeuchi and Mr. Stepp and that Mr. Stepp did not require the excavator for a particular purpose.

Generally, a claim for breach of the implied warranty of merchantability requires privity of contract. *Thongchoom*, 117 Wn. App. at 307. In this case, there is no dispute that Mr. Stepp rented the TB016 from Hertz. Mr. Stepp does not allege any facts establishing privity with Takeuchi and does not offer any basis for relaxing the privity requirement. Accordingly, Takeuchi is entitled to summary judgment on Mr. Stepp's claim for breach of implied warranty of merchantability.

It is unclear from the complaint whether Mr. Stepp is pursuing a claim for breach of the implied warranty of fitness for a particular purpose. *See* Dkt. 1-2, Exh. A at 7. Mr. Stepp fails to create an issue of fact as to whether the defendants knew that Mr. Stepp required the excavator for a particular purpose. *See* RCW 62A.2-315. Therefore, to the extent that Mr. Stepp alleges

breach of the implied warranty of fitness for a particular purpose, summary judgment on such a claim is proper.

It bears noting that the issue of whether the TB016 was defectively designed is not yet before the Court.

**D.   OTHER CLAIMS**

Takeushi also seeks summary judgment on Mr. Stepp's manufacturing defect and post-manufacture failure to warn claims. Dkt. 34 at 22. Mr. Stepp does not allege or demonstrate that the TB016 was defectively manufactured and apparently admits that he cannot make such a claim. *See* Dkt. 36-8, Exh. N at 9 ("Plaintiff believes that the product was in accordance with Takeuchi's specifications when it left the control of Takeuchi, but believes the design itself is flawed."). Similarly, Mr. Stepp has offered no facts suggesting that Takeuchi learned of a specific danger associated with the TB016 after the excavator was manufactured. The Court should therefore grant summary judgment on Mr. Stepp's manufacturing defect and post-manufacture failure to warn claims.

In the complaint, Mr. Stepp contends that "[Hertz] intentionally or is responsible for the intentional misrepresentation of facts about the excavator and for the concealment of information about the excavator." Dkt. 1-2, Exh. A at 8. Hertz moves for summary judgment on this claim, contending that Hertz did not make any representation of facts and did not conceal any information about the excavator. Dkt. 37 at 19. Mr. Stepp's responses do not address this claim, and Mr. Stepp appears to concede that this claim is without merit. Dkt. 49 at 10 ("We agree that neither 'intentional misrepresentation' nor 'breach of express warranty' apply."). Because Mr. Stepp fails to create a genuine issue of material fact as to whether Hertz misrepresented or

ORDER - 19

concealed information regarding the TB016, the Court should grant Hertz's motion as to this claim.

### VI. ORDER

Therefore, it is hereby

**ORDERED** that Takeuchi Defendants' Motion for Partial Summary Judgment (Dkt. 34) is **GRANTED**, and the only remaining claim against Takeuchi is the design defect claim. It is further

**ORDERED** that Defendant Hertz Equipment Rental Corporation's Motion for Summary Judgment (Dkt. 37) is **GRANTED**, and Hertz is **DISMISSED** from this matter.

DATED this 2nd day of October, 2008.

_____
ROBERT J. BRYAN
United States District Judge

ORDER - 20